# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

| | |
|---|---|
| In re John O. Murrin III | Case No. 12-mc-00074 (SRN)<br><br>**MEMORANDUM OPINION AND ORDER** |

John O. Murrin III, 7045 Los Santos Drive, Long Beach, California 90815.

SUSAN RICHARD NELSON, United States District Judge

## I. INTRODUCTION

This matter came before the Court on John O. Murrin III's Petition Seeking Relief from the automatic forfeiture provision of the United States District Court, District of Minnesota's Local Rule 83.6(b). (Doc. No. 3.) For the reasons that follow, Petitioner's request is denied.

## II. BACKGROUND

The factual and procedural background of Petitioner's case is documented in the Minnesota Supreme Court's opinion and is incorporated herein by reference.[1] Briefly stated, Petitioner's misconduct occurred while attempting to recoup money he lost in a Ponzi scheme in three separate courts: (1) Hennepin County District Court, (2) United States District Court for the District of Minnesota, and (3) United States Bankruptcy Court

---

[1] See In re Disciplinary Action against Murrin, 821 N.W.2d 195 (Minn. 2012). The Court recites background facts only to the extent necessary to rule on Petitioner's request that the Court disregard his suspension by the Minnesota Supreme Court.

1

for the District of Minnesota.  In re Disciplinary Action against Murrin, 821 N.W.2d 195 (Minn. 2012).  Petitioner, his wife, and another lawyer, Christopher LaNave, each represented Petitioner and his wife in various capacities in these actions.  Id.  Petitioner's misconduct included failing to comply with several court orders, naming defendants in his pleadings even after they had been dismissed from the actions by the court or Petitioner had already settled with them, asserting claims based on counts that had been dismissed, and requiring "three courts and nearly 50 defendants to spend the time and money necessary to wade through" pleadings that unnecessarily spanned hundreds of pages.  Id.  Petitioner was warned about possible discipline in each of these cases.  Id.  For example, Petitioner was sanctioned by the Hennepin County District Court judge for engaging in "oppressive, unethical, and deceitful litigation strategies" in a decision that was affirmed by the Minnesota Court of Appeals.  See Murrin v. Mosher, No. A09-314, 2010 WL 1029306, at *9 (Minn. Ct. App. Mar. 23, 2010), rev. denied (Minn. Aug. 10, 2012).

The Judge presiding over Petitioner's case in the Hennepin County District Court informed the Director of the Minnesota Office of Lawyers Professional Responsibility (the "Director") of Petitioner's conduct.  Id.  The Director's office commenced an investigation and gave Petitioner notice of it.  Id.  The matter then was presented to a Panel of the Lawyers Professional Responsibility Board, which found that there was probable cause to support public discipline against Petitioner.  Id.  In December 2010, the Director filed a petition for disciplinary action against Petitioner, alleging that he had violated Minn. R. Prof. Conduct 3.2 and 8.4(d), which mandate that an attorney must "make reasonable efforts to expedite litigation" and avoid "conduct that is prejudicial to the administration of justice."

The Minnesota Supreme Court assigned a referee to conduct an evidentiary hearing on Petitioner's alleged misconduct. Id. (citing In re Murrin, No. A11-108, Order at pp. 2–3 (Minn. Mar. 3, 2011.)) The referee held an evidentiary hearing on August 1 and 2, 2011. Id. At the hearing there was testimony from Petitioner, Petitioner's wife, and a paralegal who worked for Petitioner. Id. The referee also admitted into evidence the orders of the judges presiding over Petitioner's cases in Hennepin County, the District of Minnesota, and Bankruptcy Court, some of which contained admonishments of Petitioner. Id.

Following the hearing, the referee determined that Petitioner had violated Minn. R. Prof. Conduct 3.2 and 8.4(d) in each of the three courts and recommended that he be suspended from the practice of law for one year. Id. Petitioner appealed the referee's decision to the Minnesota Supreme Court, which concluded that the referee's findings were not clearly erroneous and that Petitioner had violated Minn. R. Prof. Conduct 3.2 and 8.4(d). Id. The Minnesota Supreme Court disagreed, however, with the referee's recommendation of a one year suspension, and instead ordered Petitioner to be suspended from practice for six months. Id.

Pursuant to Local Rule 83.6(b)(1), this Court automatically suspended Petitioner from the practice of law before it, and stated that Petitioner "shall be ineligible to practice law before this court during the same period that he is prohibited from practicing law by the Minnesota Supreme Court." (Doc. No. 1.) Pursuant to Local Rule 83.6(b)(2), Petitioner then requested that this Court not suspend him from practice for the same period determined by the Minnesota Supreme Court. (Doc. No. 3.)

3

## III. DISCUSSION

### A. Standard of Review

Local Rule 83.6(b)(1) states that any attorney who has been suspended from practicing law by any other court "shall automatically forfeit his . . . right to practice law before this Court during the same period that such attorney has been prohibited from practicing law by such other court." If an attorney has been prohibited from practicing law, but believes that "he . . . should not be required to forfeit his . . . right to practice law before this Court, then such attorney may petition this Court seeking relief from the automatic forfeiture." D. Minn. LR 83.6(b)(2). The Court must deny a petition seeking relief from the automatic forfeiture provision unless "the petitioning attorney has demonstrated, or this Court finds, that on the face of the record upon which the discipline by another court is predicated it clearly appears:

> (A) that the procedure was so lacking in notice or opportunity to be heard as to constitute a deprivation of due process; or
>
> (B) that there was such an infirmity of proof establishing the misconduct as to give rise to the clear conviction that this Court could not, consistent with its duty, accept as final the conclusion on that subject; or
>
> (C) that the imposition of the same discipline by this Court would result in grave injustice; or
>
> (D) that the misconduct established is deemed by this Court to warrant substantially different discipline.

D. Minn. LR 83.6(b)(4). Local Rule 83.6(b)(5) further clarifies that "[i]n all other respects, a final adjudication in another Court that an attorney has been guilty of misconduct shall establish conclusively the misconduct for purposes of a disciplinary proceeding in any other

4

Court of the United States."

### B. Referee Bias

Petitioner argues that the Minnesota Supreme Court improperly relied on the recommendations of the referee because he inappropriately gave collateral estoppel effect to the judge's orders containing admonishments of him. (Pet., Doc. No. 3, at pp. 1–2.) Petitioner argues that the referee was biased because he was a retired judge who was "susceptible to favoring the judges against [Petitioner]." (Id. at p. 1.) Petitioner claims that the referee failed to independently assess the evidence presented against him. (Id. at p. 2.)

Collateral estoppel, or issue preclusion, bars the re-litigation of issues, which are both identical to those issues already litigated by the parties in a prior action and necessary and essential to the resulting judgment. Hoyt v. Goodman, No. 10-3680, 2012 WL 1094438, at *5 (D. Minn. Apr. 2, 2012). Issue preclusion is based on the principles of judicial economy. Id. "By precluding parties from contesting matters that they have had a full and fair opportunity to litigate, issue preclusion acts to 'relieve parties of the cost and vexation of multiple lawsuits, conserve judicial resources, and, by preventing inconsistent decisions, encourage reliance on adjudication.'" Simmons v. O'Brien, 77 F.3d 1093, 1095 (8th Cir.1996) (citations omitted). A plaintiff who asserts collateral estoppel "to prevent a defendant from relitigating an issue previously decided against the defendant" is using "offensive collateral estoppel." Black's Law Dictionary (9th ed. 2009). The Minnesota Supreme Court has found offensive collateral estoppel to be improper in disciplinary proceedings. In re Morris, 408 N.W.2d 859, 862–63 (Minn. 1987).

The Minnesota Supreme Court properly determined that Petitioner failed to show

5

that the referee was biased against him or used other judges' statements as offensive collateral estoppel. In re Disciplinary Action against Murrin, 821 N.W.2d at 195. At the evidentiary hearing, Petitioner argued that the referee was using the other judges' statements as offensive collateral estoppel and the referee affirmatively stated that "he could not simply accept the judges' admonishments of [Petitioner] as fact." Id. The Minnesota Supreme Court further stated that "while the referee included excerpts from the court orders in his findings of fact, there is no indication in the record that the referee failed to independently review the facts of the three cases and the facts presented during the hearing." Id. Accordingly, the record demonstrates that the Minnesota Supreme Court sanctioned Petitioner with a six month suspension based on the referee's independent investigation into the facts alleged against him.

### C. Due Process

Petitioner claims that his due process rights were violated when the referee failed to provide him an opportunity to call for testimony the three judges who had presided over his cases. (Pet. at pp. 2–11.) Petitioner contends that the Director used statements made by those judges and that the referee's reliance on these statements "entitled [him] to call, examine or cross examine these witnesses." (Id. at p. 4.)

Petitioner similarly argued before the Minnesota Supreme Court that he was deprived of due process because he was "unable to cross-examine the judges whose orders were admitted at the evidentiary hearing." In re Disciplinary Action against Murrin, 821 N.W.2d at 195. The Minnesota Supreme Court stated that while due process must be afforded in disciplinary proceedings, these proceedings are "not encumbered by technical

6

rules and formal [due process] requirements." Id. (citations omitted).  Whether an attorney received due process in a disciplinary proceeding depends on whether the charges against him were clear and specific and whether he was "afforded an opportunity to anticipate, prepare and present a defense." Id. (citation omitted).

The Minnesota Supreme Court correctly determined it was clear to Petitioner that he was being investigated for violation of Minn. R. Prof. Conduct 3.2 and 8.4(d).  He was able to prepare and present a defense before an impartial fact finder.  As such, the Petitioner has failed to demonstrate that the Minnesota Supreme Court did not provide him with adequate due process.

### D. Improper Reliance on Evidence Not in the Record

Petitioner also argues that the Minnesota Supreme Court improperly relied on evidence not in the record when deciding to suspend him from practice for six months.  (Pet. at pp. 11–18.)  Petitioner claims that the Minnesota Supreme Court erred in determining that he engaged in frivolous litigation and that he improperly attempted to file amended complaints against parties that had previously been dismissed from the action.  (Id. at pp. 14–17.)

The Court determines that Petitioner's allegations are unfounded.  The Minnesota Supreme Court based its decision on an independent assessment of the record as well as the referee's recommendation.  It was provided with multiple examples of Petitioner's failure to follow orders from three separate courts.  The Court therefore determines that Petitioner has failed to demonstrate that the Minnesota Supreme Court improperly relied on evidence not in the record when it suspended Petitioner for six months.

## IV. CONCLUSION

The Court determines that Petitioner has failed to demonstrate that the Minnesota Supreme Court's decision to suspend him for six months lacked due process, was the result of "an infirmity of proof," would result in "grave injustice," or that other discipline was warranted. While the Court is sympathetic that Petitioner was a victim of a Ponzi scheme, it agrees with the Minnesota Supreme Court's decision to suspend Petitioner for a period of six months from practice.

## V. ORDER

Based on the foregoing, and all the files, records, and proceedings herein, **IT IS HEREBY ORDERED THAT** Petitioner is suspended from practice in the District of Minnesota for a period of six months from October 3, 2012. At the end of his suspension, Petitioner must file an affidavit with the Court demonstrating compliance with the provisions of this Order pursuant to the District of Minnesota Local Rule 83.6(g).


Dated: October 31, 2012         s/Susan Richard Nelson
                                SUSAN RICHARD NELSON
                                United States District Judge